364 P.2d 116

**F. B. SCHICK and Mary Eve Schick, his wife, Plaintiffs and Appellants,**

v.

**J. H. PERRY and Marian Perry, his wife, Defendants and Respondents.**

No. 9246.

Supreme Court of Utah.

Aug. 7, 1961.

**174**

Clyde & Mecham, Elliott Lee Pratt, Salt Lake City, for appellants.

McKay & Burton, Reed H. Richards, Salt Lake City, for respondents.

KELLER, District Judge.

On January 3, 1946, one Edward N. Bagley and his immediate family created what is known as Cottonwood Glade Subdivision consisting of 33 lots located in a suburban area of Salt Lake City. On January 3, 1947, the creators of the subdivision recorded an instrument styled "Restrictions of Cottonwood Subdivision." On January 19, 1951, the appellants bought Lot No. 11 of the subdivision and constructed thereon a dwelling house at an estimated cost of $60,-000. The respondents acquired an adjoining lot in early June of 1959 commenced to construct upon it a three-horse stable and tack room. The plan of the respondents called for a one-story concrete block structure 48 feet long and 12 feet wide. The appellants brought an action to enjoin the defendants from constructing the stable, alleging that its construction constituted a violation of the restrictions hereinabove referred to.

The respondents answered denying that the contemplated building, construction of which had been started, constituted a violation of the restrictions and set forth an affirmative defense to the effect that conduct on the part of the appellants constituted an estoppel to their claim, and a counterclaim for damages accruing because of the issuance of a temporary injunction which had been granted at the time when the action was commenced. The trial court found the issues in favor of the appellants and against the respondents on the affirmative defense of estoppel advanced by the respondents. On the issue of whether the erection of the horse barn constituted a violation of the restrictions, the court found the issues in favor of the respondents and in addition thereto awarded damages because of the issuance of the temporary injunction. The various assignments of error specified by the appellants are in the main to be disposed of by making a construction of the "restrictions." These contain 15 numbered paragraphs, but a conclusion to support either the contention of the appellants or that of the respondents is not aided by

any of such paragraphs except the following:

Par. I. "Each and every lot above described shall be known and is hereby designated as a 'Residential Lot' and no structure shall be erected, altered, placed or permitted to remain on any such 'Residential Lot' other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than three automobiles."

Par. III. To quote this paragraph in full would make this opinion unnecessarily long. We summarize it as a statement providing for a committee selected from the property owners within the subdivision to resolve questions relating to whether buildings to be erected are in conformity with the restrictions, and we quote the last two lines of the paragraph: "The powers and duties of such committee, and of its designated representative, shall cease on and after January 1, 1955. Thereafter, the approval described in this Covenant shall not be required unless, prior to said date and effective thereon a written instrument shall be executed by the then record owners of a majority of the lots in this subdivision and duly recorded appointing a representative or representatives, who shall thereafter exercise the same powers previously exercised by said committee."

Par. V. "No noxious or offensive trade or activity shall be carried on upon any residential lot hereinbefore described or any part or portion thereof, nor shall anything be done thereon which may become an annoyance or nuisance to the occupants of the remaining residential lots hereinbefore described. This district is not intended to be divided for or used for a commercial area, therefore, livestock and fowls for this purpose will not be permitted in the area. (This paragraph is not intended to restrict the area so as to prohibit the raising of fine small birds, fowls, or animals as pets or as a special hobby.) However, the housing of such pets must be so constructed that it will not be unsightly and the number of such birds and pets and the housing for them shall be approved by the committee."

Par. VIII. "No structure shall be moved on to any residential lot hereinbefore described or any part thereof unless it meets with the approval of the committee hereinbefore named, such approval to be given in writing."

In December, 1954, the owners of lots within the subdivision, pursuant to the provisions of Paragraph III quoted above, undertook to extend the authority of the committee therein provided for past January 1, 1955, and recorded an extension agreement purporting to have been signed by the owners of 17 lots in the subdivision. In the case of two of such lots, it developed that title stood in the name of husband and wife as joint tenants, and the wives had failed to sign. The trial court held that since the

owners of 17 lots were required to sign in order to perpetuate the committee, the fact that the two wives holding an interest in two of the lots included within the 17 as tenants in common or joint tenants with their husbands had not signed resulted in a termination of the requirement that any building erected within the subdivision must first have the approval of such a committee.

The restrictions are not ambiguous. Paragraph I is susceptible to no other construction than that the buildings permitted on each of the lots of the subdivision are to consist of only a dwelling house of not to exceed two stories in height with a private garage for not more than three automobiles. Paragraph V permits the keeping of *fine small birds, fowls or animals as pets or as a special hobby* and allows suitable housing for pets coming within the description stated.

■ Are horses fine small pets? We cannot agree with an interpretation which places them in that category. The word "small" has not often been defined in the decisions of courts. The following language from 80 C.J.S. Slungshot—Smell, page 1336, complies not only with what is stated by the few courts that have defined the term but with its common meaning. "Generally the word 'small' is a comparative term, denoting things of little size compared with other things of the same class, and depending for its significance on the circumstances of the particular case under consideration." Unless we accept the word "small" as providing a limitation on the size of animals as well as on birds, we reach a rather absurd conclusion. If our intention is to provide restrictions which result in a fine residential area, why limit the size of birds and not limit the size of animals? Obviously it will take a far larger building to house horses than to house any of the birds or fowls with which everyone is familiar in this state.

■ Paragraph III has the obvious purpose of creating a means of requiring compliance with the various provisions of the restrictions without resort to litigation. It does not follow from the fact that the residents of the area have failed to perpetuate the committee pursuant to the terms of the restrictions that the force and effect of Paragraphs I and V are completely destroyed thereby. In fact, the contract specifically provides that the restrictions shall continue for the space of 15 years and shall be automatically extended for successive periods of 10 years unless by a vote of a majority of the then owners of the lots it is agreed to a change of the covenants in whole or in part.

Having made the construction that the restrictions prohibit the erection of housing for horses on lots within the subdivision, and that failure to perpetuate the committee, if any there was, does not ter-

minate the restrictions, it becomes unnecessary to decide whether the trial court erred on other questions raised in this case. The temporary injunction was properly issued, the judgment of the trial court is reversed, and the cause remanded with directions to grant to the appellants the relief sought by this action. Costs to appellants.

WADE, C. J., and HENRIOD and CALLISTER, JJ., concur.

McDONOUGH, J., concurs in the result.

CROCKETT, J., having disqualified himself, does not participate herein.