2005-NMCA-124

122 P.3d 844

Thomas E. JONES, Plaintiff–Appellant,

v.

Jake SCHOELLKOPF and Andrea Schoellkopf, Defendants–Appellees.

No. 25,055.

Court of Appeals of New Mexico.

Sept. 22, 2005.

Thomas E. Jones, Albuquerque, NM, Pro Se Appellant.

Briggs F. Cheney, Albuquerque, NM, for Appellees.

## OPINION

PICKARD, Judge.

{1} Plaintiff appeals from the decision of the trial court, which allowed to stand a six-foot wall that Defendants had built at or near their lot line across the street from Plaintiff's house. Plaintiff claimed that the wall violated the restrictive covenants applicable to the neighborhood, which Plaintiff alleged prohibited walls higher than three feet and prohibited walls in a 25–foot set-back area. Defendants claimed, and the trial court found, that the intent of the covenants was not violated; that the covenants were ambiguous; that the covenants provided for an architectural control committee that could permit the wall they built, but there was no such committee in existence; and that changes in society since the covenants were enacted in the 1950s made a three-foot wall unreasonable. The trial court allowed 30 days for the formation of an architectural control committee and allowed it to make decisions about the completion of the wall, but prohibited the committee from ordering the wall's removal.

{2} On appeal, Plaintiff argues that (A) the trial court's ruling was incorrect as a matter of evidence and property law, (B) the trial court erred in denying him a jury trial on his claim of emotional distress damages, (C) the trial court erred in admitting evidence of a zoning decision allowing Defendants' wall, and (D) the trial court erred during the pendency of the appeal by requiring the entire transcript to be produced and requiring Plaintiff and Defendants to share equally in its cost. We agree in part with Plaintiff's first issue, but do not find reversible error in any of the other issues. We remand with directions that the trial court exercise its equitable discretion in a manner such that the rights of all parties are considered, for example, allowing a reasonable time be given for an architectural control committee to be constituted, following which that committee will decide whether it is reasonable for some variation of Defendants' wall to be allowed to stand, and if no such committee is timely formed, then the trial court is directed to evaluate the reasonableness of Defendants' wall in light of the principles contained in this opinion.

## FACTS AND PROCEDURE

{3} The Altura Addition to the City of Albuquerque was platted and replatted in the 1950s. Protective covenants were imposed, and the ones applying to the property at issue had as their purpose "the establishment, creation and maintenance of a high type residential district." The set-back provisions applying to the property at issue stated:

No building shall be erected on any lot in the above mentioned Zone C nearer than twenty-five (25) feet to the front lot line, nor more than forty (40) feet, nor nearer than twenty-five (25) feet to a side street line, and no building shall be erected nearer than five (5) feet to an interior lot line.

The covenants provided that an architectural control committee would approve all plans for buildings and additions, and they further provided that "[n]o fences or walls shall be erected, placed or altered on any lot nearer to any street than the minimum building set[-]back line unless similarly approved. Approval shall be as provided in paragraph fifteen (15)." Paragraph 14 designated the original members of the committee and the method for election of committee members after 1963, and paragraph 15 provided that:

In the event the Committee . . . fails to approve or disapprove within thirty (30) days after plans and specifications have been submitted to it, in writing, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with.

The covenants also stated that "no fence, garden wall or other like structure fronting on any street or avenue shall exceed three feet in height." Finally, the covenants provided that they would remain in existence for 25 years and would be automatically extended for successive ten-year periods unless a majority of the owners agreed to change them.

{4} Plaintiff has lived in the Altura Addition since 1965. Defendants moved in across the street from Plaintiff's property in 2002.

Defendants live on a corner lot, and their side yard faces Plaintiff's property. When Defendants purchased the property, a six-foot tall cinder block wall surrounded their backyard, but the wall was beyond the set-back area from the street. Having no actual knowledge of the covenants and desiring to enlarge and improve their backyard for their two small children, Defendants took down the existing wall and rebuilt a similar wall within a few feet of the sidewalk on the side street. A diagram of Defendants' property, showing the location of the old and new walls, together with their orientation toward Plaintiff's property follows:

The tear-down of the old wall and construction of the footing and cinder block portions of the new wall took two days, a Friday and Saturday, following which Plaintiff objected and notified Defendants of the covenants, Defendants halted the finish work on the wall, and Plaintiff filed suit less then 20 days thereafter. In fact, Plaintiff's complaint alleged and Defendants admitted that the pouring of the footings and installation of the cinder blocks took place entirely on Saturday. One Defendant testified that the wall was "far from completed" when suit was filed.

{5} Plaintiff's evidence at trial concentrated on the covenants, Defendants' constructive notice of them, and the intrusiveness of the new wall at or near the lot line in comparison to the open-looking streetscape else-

where on the immediate block. Defendants' evidence concentrated on their desire to enlarge and improve their backyard for the sake and safety of themselves and their small children; their efforts, all unavailing but after the fact, to locate an architectural control committee that could approve their wall; the fact that there are other similar walls in the Altura Addition; and the fact that other, more modern, high-end subdivisions have similar walls. In fact, the parties and the court toured the Altura Addition and several other neighborhoods to demonstrate these last points. In response, Plaintiff pointed out that Defendants had located only 6 similar walls in Altura out of a total of 170 properties.

{6} Following closing argument and the submission of post-trial briefs and requested findings and conclusions, the trial court made its own findings and conclusions and ruling. The trial court's ultimate ruling allowed the newly built wall to stand. However, the trial court allowed 30 days for the formation of an architectural control committee that could oversee the completion of the wall, and in the absence of such formation the court permitted the wall to be completed at Defendants' discretion.

{7} There appear to be three legal bases for the trial court's decision: (1) that the covenants were ambiguous insofar as what constitutes a "high type" neighborhood and what "fronting" is supposed to mean when referring to a side street; (2) that there had been a "sufficient and radical change in conditions and circumstances" such that a three-foot requirement for a wall is no longer reasonable in today's society; and (3) that the covenants contemplated variances from their strict terms regarding walls and fences with such variances being approved by the architectural control committee so that in the absence of such a committee, Defendants have been deprived of their contractual rights for which the court will provide a remedy by taking the place of the committee. Because the court found the wall reasonable in today's society and not inconsistent with "high-type" neighborhoods, the court permitted the wall to stand.

## DISCUSSION

{8} Plaintiff's challenge to the trial court's decision attacks both the findings of fact and conclusions of law. To the extent that Plaintiff contends that there are insufficient factual bases for the findings of fact, we review the evidence in the light most favorable to support the trial court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below. *Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984). To the extent that Plaintiff contends that there are errors of law in the trial court's conclusions or in those findings that function as conclusions, we apply a de novo standard of review. *Gutierrez v. Connick,* 2004–NMCA–017, ¶ 7, 135 N.M. 272, 87 P.3d 552. When the facts are not in dispute, but the parties disagree on the legal conclusion to be drawn from those facts, we review the issues de novo. *Jicarilla Apache Nation v. Rodarte,* 2004–NMSC–035, ¶ 24, 136 N.M. 630, 103 P.3d 554. Whether language in a document is ambiguous is ordinarily a question of law. *Wilcox v. Timberon Protective Ass'n,* 111 N.M. 478, 484, 806 P.2d 1068, 1074 (Ct.App. 1990).

### A. Property Law Issues

#### 1. General Rules Regarding Covenants

{9} We recently set forth the following general principles regarding restrictive or protective covenants:

> *Montoya v. Barreras,* 81 N.M. 749, 751, 473 P.2d 363, 365 (1970), teaches that restrictive covenants have historically been "used to assure uniformity of development and use of a residential area to give the owners of lots within such an area some degree of environmental stability." They have allowed the creation of stable arrangements of land use, and because their use is a concomitant right of property ownership, they can be used for any purpose that is not illegal or against public policy. *See generally* Restatement (Third) of Property (Servitudes) § 1.1 cmt. a (2000). Furthermore, "such covenants constitute valuable property rights of the owners of all lots in the tract," *Montoya,* 81 N.M. at

751–52, 473 P.2d at 365–66, and we have repeatedly recognized that reliance on restrictive covenants is a valuable property right. *Wilcox,* 111 N.M. at 485, 806 P.2d at 1075[.]

*Aragon v. Brown,* 2003–NMCA–126, ¶ 10, 134 N.M. 459, 78 P.3d 913.

{10} Plaintiff relies on the notion that the covenants should be enforced to ensure the stability of an open and inviting neighborhood in accordance with the express terms of the covenants, while Defendants rely on the notion that the covenants were drafted to allow for change in appropriate circumstances such as those found by the trial court. We believe that Plaintiff has the better argument.

## 2. Ambiguity

■ {11} Defendants' contention, both below and on appeal, is that the covenants are ambiguous as to fences in the set-back area from side streets. The trial court agreed and found ambiguity in this regard. However, Defendants concede in their brief to this Court that they "have not disputed that the wall which is the subject of this lawsuit is not consistent with the restrictions as they were created" in the protective covenants. We agree with this assessment. The covenants expressly provide that no fences or walls are to be built in the set-back area and that the set-back area is 25 feet from any side street line. Further, the covenants limit walls to three feet. Finally, the covenants set square footage and cost standards and require houses to be not more than 40 feet from the street, thereby insuring that houses are both attractive and visible from the street, together with some amount of yard space fronting the streets. The only reasonable conclusion to be drawn from these provisions is that the intent of the covenants was to create a neighborhood that was open and inviting, with front yards and yards located on side streets to be at least 25 feet in width and viewable from the streets absent approval by the architectural control committee.

■ {12} Any ambiguity in these provisions is solely the sort of ambiguity that is produced by the bare fact that two people read the provisions differently. We have held that such does not create ambiguity, and instead ambiguity is only created when provisions are reasonably and fairly susceptible to two constructions. *See Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). The same principle holds true for covenants. *See Montoya,* 81 N.M. at 750, 473 P.2d at 364 (stating that alleging a restriction is ambiguous does not make it so). Therefore, this portion of the trial court's rationale was erroneous.

## 3. Changed Circumstances

■ {13} A portion of the trial court's rationale relied on a "sufficient and radical change in conditions and circumstances." Such a finding, if supported by the evidence, would allow a trial court to set aside restrictive covenants. *See Mason v. Farmer,* 80 N.M. 354, 359, 456 P.2d 187, 192 (1969). But the degree of change must be so significant and so radical as to frustrate the original purpose of the grantors such that the original intent can no longer be carried out. *See id.*

{14} Here, Defendants contend that the only intent is to create and maintain a "high-type" residential district, which can be accomplished either with or without six-foot walls at the lot lines. But the intent may also be gleaned from the wording of the covenants, and the covenants expressly restrict buildings and walls in the 25–foot set-back areas. *Cf. State v. Stephens,* 111 N.M. 543, 547, 807 P.2d 241, 245 (Ct.App.1991) (holding, in the context of construction of statutes, that a distinct provision of a statute addressing certain conduct should prevail over a more general provision). In other words, the intent of the grantor was to create a high-type residential district by specifically requiring front and side yards visible from the streets, among other requirements.

{15{ There was also no evidence that societal conditions had changed such that high walls at or near the lot lines were so necessary to deter crime or provide for the safety of Defendants' children that the intent of the grantor would be frustrated if such high walls were not allowed. The sole evidence introduced regarding crime was a photo of the neighborhood showing a neighborhood

watch sign, which the testimony indicated meant that neighbors would watch out for one another to deter thefts. In addition, the trial court indicated that it would take judicial notice that "things are worse now than they probably were in 1958," but in the same breath said that "there's still a place for these children to be." The court was referring to the existing enclosed backyard, which the evidence indicated that Defendants wanted enlarged to enhance their own quality of life by providing a larger, sunnier backyard.

{16} There was also evidence that neighborhood residents had raised their children without problems and without walls that violated the covenants and that residents of the neighborhood liked walking around and being able to see the yards and houses and accordingly would not want high walls at the lot lines. Moreover, the fact that 6 of 170 lots have walls to some greater or lesser degree in violation of the covenants does not work a change sufficient to set aside the covenants. *See Wilcox,* 111 N.M. at 486, 806 P.2d at 1076 (holding that where only 10 of 412 lots were in violation of the covenants, the covenants were not rendered obsolete by a substantial change). In sum, we do not believe that the evidence was sufficient, even in the light most favorable to support the trial court's ruling, to support a finding that such a radical change had taken place since the 1950s that the set-back and height restrictions on walls would serve no purpose.

■ {17{ This case is thus distinguishable from *Mason,* 80 N.M. at 355–56, 359–60, 456 P.2d at 188–89, 192–93, in which our Supreme Court upheld the trial court's decision not to enforce a restriction prohibiting the use of property for trade or commerce, when the character of the community of Cloudcroft had changed from a small summer resort, comprised solely of residences, to a full-service village. In such a case, where a property was no longer suitable for residential purposes due to the changes in the surrounding properties, it was inequitable to enforce the restriction. *Id.* at 359–60, 456 P.2d at 192–93; *see Williams v. Butler,* 76 N.M. 782, 784, 418 P.2d 856, 857 (1966) (indicating that it is only when the purposes of the covenants are completely defeated that the covenants will

not be enforced). In contrast, in this case, the degree of change is not so great, and we cannot say that it would be inequitable to enforce the set-back and height restrictions on fences and walls, given the evidence of the vast degree of compliance and preferences of the neighbors in the rest of the neighborhood. "Substantial change which does not destroy the benefits arising out of a restrictive covenant is insufficient to warrant" setting aside a covenant. *Whorton v. Mr. C's,* 101 N.M. 651, 654, 687 P.2d 86, 89 (1984). Thus, this portion of the trial court's rationale also was erroneous.

### 4. Covenants as Vehicle for Change

■ {18} Defendants argue, and the trial court found, that with no viable architectural control committee, Defendants have been deprived of their contractual rights. While this argument has some force, we do not agree with the remedy argued by Defendants and adopted by the trial court. Nor do we agree that a committee would necessarily act reasonably if it approved of Defendants' wall.

{19} It is clear that the covenants contemplated an architectural control committee. The original committee was required to review and approve "construction plans and specifications and a plan showing the location of the structure" to insure "quality of workmanship and materials, harmony of external design with existing structures, and as to location with respect to topography and finished grade elevation, and as to orientation with respect to then existing houses." The covenants also contemplated that the committee would review additions to houses, as well as fences and walls proposed within the set-back areas. However, this does not mean that the architectural control committee was a "vehicle for change" as argued by Defendants. The vehicle for change was the provision allowing a majority of the lot owners to vote to change the covenants.

■ {20} The architectural control committee was empowered to grant variances with respect to walls and fences in the set-back area. But this power would have to be exercised reasonably. *See Appel v. Presley Cos.,* 111 N.M. 464, 466, 806 P.2d 1054, 1056 (1991) (holding that when covenants require

the approval of plans, structures, or exceptions to the covenants, the entity providing approval or disapproval must act reasonably); *Cypress Gardens, Ltd. v. Platt,* 1998–NMCA–007, ¶¶ 21–23, 124 N.M. 472, 952 P.2d 467 (same). And because lot owners have a right to enforcement of the covenants as valuable property rights, *see Wilcox,* 111 N.M. at 485, 806 P.2d at 1075, the architectural control committee could not grant variances in a way that would "destroy the general scheme or plan of development." *Appel,* 111 N.M. at 466, 806 P.2d at 1056.

{21} In this case, the evidence was that the committee had fallen into disuse. However, Defendants, being unaware of the covenants, did not seek to have their plans approved by an architectural control committee until after they had already completed the cinder block work on the wall. There was evidence that such a committee could "probably" have been revived.

{22} In the absence of the committee, the trial court held that Defendants were deprived of their contractual rights and the court could substitute itself for the committee and make decisions as long as they were reasonable. *See id.; Cypress Gardens, Ltd.,* 1998–NMCA–007, ¶¶ 21–23, 124 N.M. 472, 952 P.2d 467. We find no support in these cases for the proposition that the trial court can simply substitute itself for a committee, particularly in circumstances in which the person required to go before the committee has not done so and has proceeded on a weekend day to build the basic framework of a structure in violation of the covenants.

{23} It is true that a court of equity has broad powers. *See Plaza Nat'l Bank v. Valdez,* 106 N.M. 464, 467, 745 P.2d 372, 375 (1987) (stating that a court sitting in equity "may avail itself of those broad and flexible powers which are capable of being expanded to deal with novel cases and . . . [e]quity has the inherent power to supply a method in any suit to protect the rights of all interested parties" (citation omitted)). But, as indicated in the immediately preceding quotation, in fashioning relief, the court must protect the rights of all parties.

{24} We have recently stated the standard of review for the exercise of equitable powers: "The question of whether, on a particular set of facts, the district court is permitted to exercise its equitable powers is a question of law, while the issue of how the district court uses its equitable powers to provide an appropriate remedy is reviewed only for abuse of discretion." *United Props. Ltd. v. Walgreen Props., Inc.,* 2003–NMCA–140, ¶ 7, 134 N.M. 725, 82 P.3d 535. Under the circumstances of this case, in which Defendants did have a contractual right to an architectural control committee where they could present their plans for a nonconforming wall, and in the absence of such a committee, we are of the opinion that the legal standards for a potential exercise of equitable discretion are met.

{25} However, in apparently failing to consider the rights of all parties, we believe that the trial court abused its discretion. In particular, we deem it noteworthy that Defendants did not seek out an architectural control committee prior to making structural alterations on their property, and Defendants appeared oblivious to the existence of any controls on their property even though the trial court correctly found that they were on constructive notice of the covenants. Further, the trial court erroneously ruled that the covenants were ambiguous and did not give any weight to the existence of the covenants regarding set-back and wall height, having found, also erroneously, that the changes in circumstances rendered them inapplicable. Finally, the trial court did not appear to give due weight to the specific covenant regarding set-backs.

{26} In the only case that the parties were able to locate or that we have been able to locate having facts comparable to ours, the court held that the non-existence of an architectural control committee did not negate specific covenants disallowing certain buildings. *Schick v. Perry,* 12 Utah 2d 173, 364 P.2d 116, 118–19 (1961) (holding that landowners could not build a horse stable prohibited by the covenants on the ground that the committee was no longer in existence). To be sure, the court in that case appeared to hold that the committee could not have approved the horse stable in any event, al-

though that is not so clear to us. What we glean from the case is that the fact a committee falls into disuse does not excuse compliance with the remainder of the covenants.

{27} In our view, a more appropriate exercise of discretion would have been to allow either Plaintiff or Defendants and their neighbors a reasonable opportunity to reconstitute the architectural control committee. If the neighbors could not constitute a committee in a reasonable time, only then would we agree with the trial court that in the exercise of its equity jurisdiction it could make a reasonable decision itself. Its decision, however, should not be premised on any notion of ambiguity or that circumstances have changed to such a degree that the setback and height limitation on fences are no longer enforceable. Moreover, its decision must take into consideration the explicit prohibitions in the covenants. It is one thing to make exceptions that involve a few feet of discrepancy from the set-back lines or to allow a shorter fence closer to the street; it is quite another to make an exception that completely negates the explicit language of the covenants.

{28} This is not to say that the trial court could not arrive at some different equitable solution. The decision as to what relief to grant once the equities are balanced is initially for the trial court. But the trial court must consider the rights of all parties, and in this case we have held that just as Defendants have a right to have a committee consider their proposal to build a wall near the lot line, so too Plaintiff has a right under the covenants not to have a tall wall fronting his property in the absence of a committee's reasonable approval.

### B. Emotional Distress Damages

{29} Plaintiff alleges that the trial court erred in denying his request for a jury trial on his claim of damages from emotional distress. We disagree. The only evidence of emotional distress presented below was that Plaintiff suffered tension from this dispute with his neighbors. This is precisely the type of emotional distress that our cases require to be suffered by people living in society without resorting to the courts for

redress. That is the reason our courts have provided extremely narrow circumstances for the award of emotional distress damages without evidence of other injury. *See Trujillo v. N. Rio Arriba Elec. Coop.*, 2002–NMSC–004, ¶ 28, 131 N.M. 607, 41 P.3d 333; *Williams v. Stewart*, 2005–NMCA–061 ¶ 38, 137 N.M. 420, 112 P.3d 281. The trial court was correct in dismissing Plaintiff's request for a jury trial on his claim for emotional distress. We note that no evidence was adduced below of any other damages alleged to have been caused by the violation of the covenant. *Cf. Leigh v. Vill. of Los Lunas*, 2005–NMCA–025, ¶¶ 13–14, 137 N.M. 119, 108 P.3d 525 (holding that damages for violation of covenant are measured by the value of the property before and after the violation).

### C. Admission of Evidence of Zoning Decision

{30} The trial court admitted evidence of the City's approval, in the context of a request for a variance, of Defendants' wall. Plaintiff contends that this decision was erroneous. In admitting the evidence, the trial court fully recognized that covenants could provide more stringent requirements than those set forth in the zoning laws. The trial court admitted the evidence in contemplation of a decision on the reasonableness of the wall in the event it found the covenants prohibiting it unenforceable. We find no error in the trial court's decision. Evidence may be admissible for one purpose but not another. *See State v. Wyman*, 96 N.M. 558, 560, 632 P.2d 1196, 1198 (Ct.App.1981). Here, the trial court properly admitted the evidence for one purpose, recognizing that it was not admissible to vary from the covenants to the extent that the covenants were enforceable. We find no error in the trial court's decision in this regard.

### D. Cost of Transcript

{31} Plaintiff contends that the trial court erred in requiring the designation of the entire transcript on appeal and in requiring Plaintiff to pay for any of it. Plaintiff initially filed a designation of no transcript, *see* Rule 12–211(C)(1) NMRA, on the ground that his appeal was based on the documents,

such as the covenants, and therefore no transcript would be necessary. Defendants objected and applied for an order under that same rule, requiring Plaintiff to designate the transcript. The trial court allowed Defendants to designate the entire transcript, but ruled that Plaintiff would be required to bear half the cost.

{32} Plaintiff's docketing statement contended that the trial court erred in not upholding the protective covenants, which he alleged prohibited the wall; erred in "holding that [P]laintiff was not damaged by [D]efendants" and that Plaintiff was not entitled to have a jury assess this damage for emotional distress; and erred in admitting evidence of the decision of the zoning authorities. Plaintiff specifically challenged several of the trial court's findings of fact.

{33} In contending that he did not need to designate any transcript because he was relying on the documents and in arguing that he did not need to designate any transcript because "[t]here is nothing in the transcript that will aid the plaintiff in this appeal," Plaintiff misconstrues the function of an appellate court and Plaintiff's, as the appellant's, role in challenging the trial court's findings and its rulings. We have explained how an appellant is to challenge a trial court's factual findings in *Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 184–86, 848 P.2d 1108, 1111–13 (Ct.App.1993). There, we stressed the importance of setting forth the substance of all of the evidence bearing on a proposition and then explaining why that evidence, when viewed in the light most favorable to the decision, does not support the decision. *Id.*

{34} Rule 12–211(C)(1) states that "[t]he appellant shall designate all portions of the proceedings material to the consideration of the issues presented in the docketing statement ..., but shall designate only those portions of the proceedings that have some relationship to the issues on appeal." What the first clause of this sentence means is the same thing that *Martinez* requires, *i.e.*, that the appellant must designate all portions of the proceedings bearing on the propositions that the appellant will be challenging. The appellant cannot rely solely on the portions of the proceedings that favor its position. If the appellant does not designate the necessary portions, the appellee may do so or may rely on the proposition that the appellant has not brought a sufficient record to the appellate court, but the appellee may do the latter at its peril. *Compare Luxton v. Luxton,* 98 N.M. 276, 279, 648 P.2d 315, 318 (1982) (holding that when an appellant did not insure that exhibits relevant to the issues were part of the record on appeal, the Court would rule against her substantial evidence issue), *with State v. Archuleta,* 118 N.M. 160, 161–62, 879 P.2d 792, 793–94 (Ct.App.1994) (holding that when an appellee could have designated portions of the record that the appellant did not designate and did not point out what testimony was missing, the Court would rule on the issues based on the record designated by appellant).

{35} Thus, inasmuch as Plaintiff challenged the basis of the trial court's decision and specifically challenged findings of fact, Defendants were properly proceeding in accordance with Rule 12–211(C)(1) to ask the trial court to require Plaintiff to designate the entire transcript. The trial court's ruling, requiring Plaintiff to pay half the cost of the transcript, was within its authority because the trial court could not be certain whether the entire transcript was necessary and because this Court will determine who shall pay the cost of the transcript in any event. *See* Rule 12–403 NMRA (providing that the prevailing party shall recover costs unless the court shall otherwise determine and that costs include the cost of the transcript ordinarily paid for by appellant).

{36} Because Plaintiff did not prevail totally on appeal and in light of our remand, we believe that the trial court's equal division of the cost of the transcript was appropriate. Likewise, Plaintiff may recover from Defendants one-half of his other costs on appeal, consisting of the payment of the docket fee and the record proper.

## CONCLUSION

{37} The decision of the trial court is reversed and remanded for further proceedings in accordance with this opinion. The

trial court may allow a reasonable time for formation of an architectural control committee, which can determine whether it would be reasonable to waive the set-back requirement for some variation of Defendants' wall. It is clear to us, however, that a solid, six-foot wall at or near the lot line is in violation of the covenants and therefore unreasonable at this time. If the trial court chooses this avenue of relief and if no committee is formed, the trial court may make the same determination, giving due consideration to the rights of both Plaintiff and Defendants. If supported by the evidence, the trial court may exercise its discretion in some other way, including requiring the wall to be completely torn down, partially torn down and lowered, moved back, or some combination of these or other remedies. In other respects, the decision is affirmed, and Plaintiff is awarded half the costs of the docket fee and record proper.

{38} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and CYNTHIA A. FRY, Judge.