This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37229**

**WALTER PIÑA,**

      Plaintiff-Appellant,

v.

**JUAN MARTINEZ, ELAINE CHAVEZ,
and FERNANDO CHAVEZ,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
David K. Thomson, District Judge**

Sommer, Udall, Hardwick & Jones, P.A.
Cullen Hallmark
Santa Fe, NM

for Appellant

Padilla Law Firm, P.A.
Ernest L. Padilla
Santa Fe, NM

for Appellees

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Plaintiff Walter Piña appeals a district court order limiting his use of the prescriptive easement (Easement) across Elaine and Fernando Chavez's (collectively, Defendants) land, to access Tract Two of Plaintiff's land, to two ingresses and egresses, once a year during hay harvesting season, with five days advance notice given to Defendants. We affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

## BACKGROUND

{2}     Plaintiff and Defendants own adjoining property in Rio Arriba County. Defendants own approximately sixteen acres of land (Defendants' Property). Plaintiff owns approximately 177 acres of land located in four separate tracts of land, including Tract Two located directly east of Defendants' Property. The tracts of land that Plaintiff owns form a "horseshoe-shaped" parcel surrounding Defendants' Property. The Easement runs east from U.S. Highway 84 (which runs from north to south), across neighboring land (not involved with this dispute), continues across the southern border of Defendants' Property, to Plaintiff's property at Tract Two.

{3}     Prior to 1957, Alfonso Etturiaga owned approximately twenty-three acres of undivided land, which included what is now Defendants' Property. At the time, the Etturiaga family also owned Tract Two. In February 1957, Alfonso Etturiaga conveyed Defendants' Property to Defendant Fernando Chavez's parents, totaling approximately sixteen acres of land. Defendants themselves acquired Defendants' Property in 1971. In October 1960, Defendant's parents conveyed five acres (Five Acres) to Plaintiff's father. Plaintiff's father entered into an oral lease for Defendants' Property and used Defendants' Property, as well as the Five Acres, for his commercial cattle and hay businesses until his death in 1976. The Five Acres were subsequently conveyed to Plaintiff. The Five Acres is part of Tract Three of Plaintiff's land.

{4}     After conveying the sixteen acres of land to Defendant Fernando Chavez's parents, Alfonso Etturiaga continued to use the Easement across the Defendants' Property to access Tract Two for his commercial hay and cattle business. In November 1983, Alfonso Etturiaga sold Tract Two to Plaintiff. Plaintiff continued to lease the Defendants' Property for his hay business following his father's death until the mid-1980s.

{5}     Before Defendants' predecessors in title leased Defendants' Property to Plaintiff, Defendants and Plaintiff's families worked the Defendants' Property together, and the Plaintiff's family used the Easement to access their property with permission from Defendants and their predecessors in title. However, in the mid-1980s, Defendants terminated the oral lease they had with Plaintiff to use Defendants' Property. Plaintiff has other ways to access Tracts One, Three, and Four, but continued to use the Easement to access Tract Two for his hay business.

{6}     Defendants were not living on the land while they leased Defendants' Property to Plaintiff, and after the lease ended, Defendants' Property was essentially vacant until the early 2000s. Defendants rarely visited their property and were not aware that Plaintiff continued to use the Easement. In 2003-2004, Defendants divided Defendants' Property into what it is today, two separate residential and agricultural tracts. The two tracts are separated by a fence and a closed gate. After 2004, Defendant Fernando Chavez observed Plaintiff crossing Defendants' Property and refused to allow Plaintiff to use the Easement, resulting in tension between the parties.

**{7}** Plaintiff filed a restraining order on August 26, 2014, seeking injunctive relief to stop Defendants from interfering with his use of the Easement across Defendants' Property to access his property, which this Court interprets to be Tract Two. The district court granted the restraining order in part and denied it in part, ultimately allowing Plaintiff to temporarily use the Easement to obtain his hay, and granted Plaintiff leave to file a complaint. Plaintiff filed an amended complaint on October 1, 2014, asking the district court to quiet title to the Easement for access to Tract Two under the theory of prescriptive easement, or alternatively, declare that Plaintiff has a prescriptive easement, and grant injunctive relief from Defendants interfering with his use of the Easement. Plaintiff later filed another amended complaint including the theory of easement by necessity. Defendants filed counterclaims, which were dismissed before trial and are not at issue on appeal.

**{8}** The district court held a three-day bench trial in July 2016. More than a year after trial, the district court entered its findings of fact and conclusions of law. The district court found that "all times material hereto, Defendants . . . and their predecessors in title were aware that Alfonso Etturiaga and his successors in title were using the disputed Easement for ingress and egress." It further found that Defendants did not give Plaintiff permission to use the Easement to access Tract Two. The district court also found that from the time Plaintiff acquired Tract Two, he has continuously used the property for his hay business.

**{9}** The district court denied Plaintiff's claim for easement by necessity.[1] It found that any use of the property *prior* to 1986 was with permission and that an ensuing prescriptive easement exists across Defendants' Property, established by Plaintiff accessing Tract Two for purposes of Plaintiff's hay business during the ten-year prescriptive period *after* permission was revoked in 1986. However, the district court concluded that Plaintiff failed to prove the Easement also existed for access to Tracts One and Three, and Tract Four. The district court enjoined Defendants from interfering with Plaintiff's use of the Easement; however, it imposed use limitations, limiting Plaintiff's use to "cut, rake, bale and retrieve the hay during harvest season, once a year. . . . Reasonable use is twice for ingress and twice for egress," and with five days prior notice to the Defendants. This appeal followed.

## DISCUSSION

**{10}** On appeal, Plaintiff argues (1) the district court's finding limiting the use of the Easement is not supported by substantial evidence; and (2) the district court's limitation of access to Tract Two via the Easement based on Defendants' concerns for their grandchildren is based on a misapprehension of law.[2] As discussed in detail below, we affirm, in part, and reverse and remand, in part.

---

1Additionally, throughout trial Plaintiff repeatedly waived his necessity argument.
2Plaintiff also argues that the district court erred by finding a permissive easement rather than a prescriptive easement during the ten-year period from 1957-1967. However, we need not resolve this issue because we affirm the district court's finding that a prescriptive easement was established from

## I.      Standard of Review

**{11}**    We review the district court's findings related to the Easement and its scope by determining "whether substantial evidence supports the district court's findings and whether these findings support the conclusions that [each of] the elements required to establish [an] . . . easement by prescription were not proved by clear and convincing evidence." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 9, 133 N.M. 50, 61 P.3d 176. "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with the abiding conviction that the evidence is true." *Brannock v. Lotus Fund*, 2016-NMCA-030, ¶ 25, 367 P.3d 888 (internal quotation marks and citation omitted).

## II.      Historical Use of the Prescriptive Easement

**{12}**    Plaintiff argues that there is not substantial evidence to support the district court narrowing the use of the Easement. We agree with Plaintiff in part, as explained below, and remand to the district court for further consideration in accordance with this aspect of our ruling.

**{13}**    The district court ruled that Plaintiff's easement "may [only] be used to cut, rake, bale and retrieve the hay during harvest season, once a year, either in August or September." The district court further defined reasonable use of the Easement as "twice for ingress and twice for egress." In addition, Plaintiff "is to give [Defendants] five days[] notice prior to harvesting hay on Tract [Two] so [Defendants] may harvest any hay on the [E]asement. [Plaintiff] must state in writing [to] the email address [provided] to deliver the notice."

**{14}**    "[W]e review the evidence in the light most favorable to support the [district] court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844. The general rule is that "the extent [or scope] of a prescriptive easement is established by its historical usage." *Maloney v. Wreyford*, 1990-NMCA-124, ¶ 15, 111 N.M. 221, 804 P.2d 412. To determine if a specific use of an easement is within the pattern of uses used to establish the easement, courts consider "(1) their similarity or dissimilarity of purpose; (2) their respective physical attributes; and (3) the relative burden caused by them upon the servient parcel." *Id.* (internal quotation marks and citation omitted).

### A.      The Scope of the Easement for Use Only During Hay Season is Supported by Substantial Evidence

---

1986-1996. Additionally, we note that while Defendants argue that Plaintiff did not prove he is entitled to a prescriptive easement for Tracts One, Three, and Four, Plaintiff does not appeal the district court's finding that he did not prove a prescriptive easement for those tracts. Nor does Plaintiff appeal the district court's finding that he is not entitled to an easement by necessity to access the Five Acres in Tract Three; therefore, we do not address those portions of the district court's judgment on appeal.

**{15}** Plaintiff contends that the district court's finding limiting his use of the Easement only during the hay season is not supported by substantial evidence. Plaintiff argues that the district court erred in evaluating the historical use of the Easement, finding that the Easement had not been used during irrigation season, the winter, or any time of the year other than during hay harvesting and only for hay harvesting. We disagree.

**{16}** The district court concluded that Plaintiff established a prescriptive easement across Defendants' Property for the purpose of hay harvesting. And further, the purpose of the easement is to provide ingress and egress to Tract Two for Plaintiff's existing hay operations, but does not provide access to any other tracts of land.

**{17}** These conclusions are supported by substantial evidence. During the district court's site visit, it found that it was not credible that the Easement was in constant use during irrigation season or during the winter months based on the use and topography of the land because Defendants' Property is "irrigated such that the slope of the land allows for water to move and pond in what is argued to be the [E]asement." *See Bd. of Cnty. Comm'rs of Doña Ana Cnty. v. Little*, 1964-NMSC-240, ¶ 11, 74 N.M. 605, 396 P.2d 591 (allowing the fact-finder "to use the knowledge gained by a view of the premises, not only to interpret the evidence offered, but also as independent evidence of the facts as these appear to him").[3]

**{18}** Testimony from Jose Etturiaga, the son of Plaintiff's predecessor in interest to Tract Two, further established that the width and access of the Easement varied depending on the time of year due to water ponding on the Easement during irrigation season and snow melting in the winter. Moreover, Plaintiff also testified that during irrigation season, he and his workers do not use vehicles to travel across the Easement unless they have to, and if they do they use four-wheelers, because they do not want to disrespect Defendants' family or damage their property. Plaintiff also admitted that he uses another easement he has to access Track Two during irrigation season.

**{19}** Other witness testimony also suggests that Plaintiff did not keep cattle on Tract Two from 1986 to 1996. Duracino Duran, who worked with Arturo Piña and Plaintiff on the land beginning in 1972, testified that Plaintiff sold his cattle around 1970 and began to just use the land for his hay operation. He further testified that Plaintiff later bought more cattle, a smaller herd, and eventually sold those cattle in the mid-1980's. Plaintiff also testified that he continued to run a small herd of cattle after his lease with Game

---

3Plaintiff also argues that the district court judge ignored evidence in the record and relied upon his own observations and inferences made during a site visit to support his decision in limiting the use of the Easement to two ingresses and egresses during the hay season. The district court's finding of fact number 61 refers to the topography of the land, which was personally observed by the judge on a site visit on June 10, 2016. As discussed in this opinion, we reject this contention and conclude there to be sufficient evidence within the record as a whole to establish that the district court's findings are supported by substantial evidence.

and Fish ended in 1984, but those cattle were kept on a portion of Tract Three, not Tract Two.[4]

**{20}** Therefore, there is substantial evidence to support that the Easement is not consistently used during irrigation season or during the winter for ingress and egress to Tract Two due to the flooded or muddy conditions during this time of year, and because Plaintiff had no cattle on Tract Two during the prescriptive period—from 1986 to 1996—that would have required access during the winter months. *See Jones*, 2005-NMCA-124, ¶ 8. As such, we affirm the district court and hold substantial evidence supports that the historical use of the Easement is limited to hay harvesting season.

**{21}** Plaintiff also implies that the historical use of the Easement does not support the district court's requirement that Plaintiff provide notice five days before using the Easement. The district court concluded that notice was required, to give Defendants adequate time to harvest their hay prior to Plaintiff using the Easement to avoid destroying Defendants' hay. This conclusion is also supported by substantial evidence. Plaintiff testified that by the time he is almost done harvesting hay on Track One, Defendants are usually done harvesting their hay, and because he respects Defendants' Property he would not cross the Easement until Defendants were done harvesting. Therefore, there is substantial evidence to require five days' notice prior to Plaintiff using the Easement.

**B.      The Scope of the Easement Related to Frequency of Use Is Not Supported by Substantial Evidence**

**{22}** Plaintiff further argues that there is not substantial evidence to support further limiting the scope of the Easement to only once a year with two ingresses and egresses.

**{23}** After a careful review of the record, we were unable to find evidence that supports the district court's conclusion that the historical use of the Easement only allowed for two ingresses and two egresses once a year. *See Hough v. Brooks*, 2017-NMCA-050, ¶ 18, 399 P.3d 387 ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." (internal quotation marks and citation omitted)). While Defendants, in their response to Plaintiff's motion to reconsider, mention that the "number of reasonable ingresses and egresses can be extrapolated based on common annual yields" and cites to "Exhibit A, Office of the State Engineer, Ariel Map of Section Six, Rio Brazos section," there was no evidence presented during trial that supports Defendants' argument. Further, there was no evidence in the trial briefs or at trial that explains how the district court came to this conclusion, nor does the district court provide a citation in its order to direct us where this conclusion originated. Therefore, we reverse the district court and hold that there

---

[4]Plaintiff directs us to the testimony of Pedro Arechuleta, who lives near Defendants' Property and can see the Easement from his house, to support that he uses the Easement during the winter to feed his cows. However, upon our review of the record, Pedro Arechuleta did not live on the land that he currently resides during the prescriptive period.

was not substantial evidence to support the district court limiting the Easement's use to once a year for two ingresses and egresses during the hay harvesting season. We remand on this limited issue for further consideration of the appropriate frequency of use, and direct the district court to conduct further proceedings, as necessary, to make additional findings upon which to base the Easement's permitted frequency of use during harvest season.

### III. Limiting the Use of the Easement to Protect Defendants' Grandchildren

**{24}** Lastly, Plaintiff contends that the district court's limitation of access to Tract Two via the Easement in order to protect Defendants' grandchildren is based on a misapprehension of law. Plaintiff asserts that the district court was not justified in restricting the Plaintiff's historical year-round use of the Easement based off of Defendants' concerns that Plaintiff's farm equipment could potentially endanger their grandchildren. Plaintiff emphasizes that there was no evidence presented at trial that Defendants' grandchildren had been previously injured by Plaintiff or the farm equipment he drives across the Easement; rather, it was a generalized worry that the Easement was located close to Defendants' driveway and a basketball court they built in 2004. We acknowledge the use of an easement may be modified because of changed conditions. *See* Restatement (Third) of Prop.: Servitudes § 7.10 (2000). However, the evidence presented at trial did not fully address the change in conditions that would support whether there should be a modification of the Easement related to the possibility of injuries to children arising from equipment usage related to the easement.

**{25}** Indeed, there is no indication the district court based its ruling on such a concern. Rather, the district court merely mentioned Defendants' grandchildren in its order as an aside, observing that the notice requirement should mitigate any concerns regarding the safety of the grandchildren. Such is not tantamount to a determination that potential peril to Defendants' grandchildren formed the basis of the district court's limitation of the frequency by which Plaintiff could use the Easement during hay season. As addressed above, the notice requirement of five days is supported by substantial evidence.

### CONCLUSION

**{26}** We affirm with respect to the district court's finding that the Easement was permissive until 1986 and a prescriptive easement was established thereafter for Plaintiff's use during hay season. We affirm the notice requirement. We reverse with respect to limiting use of the Easement to once a year for two ingresses and two egresses, and remand to the district court for further proceedings in accordance with this opinion.

**{27} IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**