This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37829**

**STEPHEN HARRIS,**

> Plaintiff-Appellee,

v.

**CINDY DICK,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Court Judge**

Firth, Bunn, Kerr & Neill
Edward DeV. Bunn, Jr.
El Paso, TX

Pierce & Madrid P.C.
Hugo Madrid
El Paso, TX

for Appellee

Martin & Lutz, P.C.
David P. Lutz
Las Cruces, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}**     Defendant Cindy Dick appeals the final judgment of the district court in a bench trial for the tort of conversion, in which Defendant was found to have deprived her brother, Plaintiff Stephen Harris, of $26,657 worth of his personal belongings.

Defendant argues that both the district court's finding of conversion and the amount of damages involved misapplication of the law to the determined facts. We disagree and affirm.

## DISCUSSION

**{2}** The district court found Defendant's conversion of Plaintiff's property occurred during Defendant's divorce proceedings against Mr. James Dick. During the divorce, Mr. Dick asked his longtime friend and Defendant's brother, Plaintiff, to reside in a casita adjacent to the house owned by Mr. Dick—in which Defendant lived—in Anthony, New Mexico, to serve as a "buffer" throughout the divorce proceedings. Plaintiff moved into the casita at the end of 2016, though he did not have a rental agreement with Defendant, Mr. Dick, or the limited liability corporation controlled by Mr. Dick that owned the property.

**{3}** During February 2017, as things deteriorated between Defendant and Mr. Dick, Plaintiff abruptly vacated the casita, leaving a large portion of his personal belongings behind. Plaintiff alleges, and Defendant disputes, that Plaintiff's rapid departure from the casita was due to a warning from the Federal Bureau of Investigation that he was imminently in danger at that location. The district court did not adopt this allegation in its findings of fact; however, it found that when Plaintiff returned on several occasions to retrieve more of his belongings from the casita, each such trip was shortened due to Plaintiff's perceived concerns for his safety. During one of these trips, Plaintiff took a video recording of the casita and what belongings remained.

**{4}** At some point between February 2017 and June 2017, Defendant changed the locks on the casita, preventing Plaintiff from securing his remaining belongings. On June 6, 2017, Plaintiff filed an action in magistrate court demanding entry to the casita to retrieve his remaining belongings. Following a stipulated order in that proceeding, Plaintiff returned to the casita on June 13, 2017, accompanied by a locksmith and a Doña Ana County Deputy Sheriff, and was able to retrieve his belongings left in the dwelling. Upon this final visit, Plaintiff confirmed that multiple personal items were missing from the casita. Plaintiff subsequently filed the underlying complaint in this action.

**{5}** The district court held a one-day bench trial on October 18, 2018. At the trial, Plaintiff testified that during the relevant time, only Plaintiff, Defendant, and Mr. Dick had keys to the casita. Plaintiff explained that both he and Mr. Dick departed the residence at the same time for the same alleged safety concerns. Plaintiff stated that Defendant called the police several times in an effort to prevent him from entering the casita and that he felt speaking to Defendant would not be "a wise decision" given the high emotions that characterized the situation. Plaintiff did text Defendant on one occasion to demand his belongings, but received a responsive text from Defendant stating her contention that Plaintiff had all his belongings, despite the action pending in magistrate court.

**{6}** Plaintiff also testified that he had a thorough account of most of his belongings' values through online shopping receipts. Among the missing items, Plaintiff listed two metal etched photographs of his daughter, estimated by Plaintiff to be worth $10,000 due to their great sentimental value; thirty-seven bottles of the health supplement TA-65, valued at $12,487.50; a trophy head of an African warthog that Plaintiff had shot, which he valued at $1,100; as well as clothes, bedding, kitchenware, and numerous other personal effects. Plaintiff valued the total amount of his missing belongings to be $43,136.77. As Defendant's counsel elucidated on cross-examination, these values were the amounts Plaintiff paid for the goods new, and failed to account for any depreciation since acquisition. To this point, Plaintiff maintained that some of the items had gained value over time and that he regularly gave away items of clothing when they started to get worn, retaining only those in good condition.

**{7}** Among the other witnesses at the trial, both Defendant and one of her acquaintances testified. Defendant categorically denied that she took any of Plaintiff's property. The acquaintance testified that Defendant had asked him to change the locks on the casita to prevent Plaintiff and Mr. Dick's entry. In the acquaintance's opinion, this request was due to great enmity by Defendant towards Plaintiff and Mr. Dick. Through his conversations with Defendant, the acquaintance became aware that some of Plaintiff's belongings were put up for sale or given away by Defendant under the pretense of her having authority over the items.

**{8}** The district court ultimately determined that Defendant had divested Plaintiff of his rights of use and enjoyment of his personal property, constituting conversion. Relevant to the district court's finding was that Plaintiff had demanded his belongings be returned, and Defendant had nonetheless withheld the property. However, the district court declined to award damages for several listed items, including the $10,000 etched photographs, leaving the final amount Plaintiff was entitled to receive to be $26,657.00 plus statutorily entitled interest.

**Finding of Conversion**

**{9}** Defendant first alleges that the district court erred in finding that the determined facts constituted conversion. Defendant purports to solely appeal the legal sufficiency of the district court's judgment, but her arguments implicate whether sufficient evidence was presented. "When considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." *N.M. Mil. Inst. v. NMMI Alumni Ass'n*, 2019-NMCA-008, ¶ 19, 458 P.3d 434 (alteration, internal quotation marks, and citation omitted). "[W]e review the evidence in the light most favorable to support the trial court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844. "To the extent that [the p]laintiff contends that there are errors of law in the trial court's conclusions or in those findings that function as conclusions, we apply a de novo standard of review. When the facts are not in dispute,

but the parties disagree on the legal conclusion to be drawn from those facts, we review the issues de novo." *Id.* (citation omitted).

**{10}** "Conversion is the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Fogelson v. Wallace*, 2017-NMCA-089, ¶ 83, 406 P.3d 1012 (internal quotation marks and citation omitted). By Plaintiff's complaint and the district court's findings, this case involved the third of those formulations: a wrongful detention after demand has been made. "A refusal must be absolute and amount to a denial of [the] plaintiff's title or right to possession." *Taylor v. McBee*, 1967-NMCA-015, ¶ 25, 78 N.M. 503, 433 P.2d 88.

**{11}** Defendant's argument rests heavily on Plaintiff's capacity to have retrieved his things between February 2017 and whenever Defendant changed the locks, a period of time that she alleges makes Plaintiff's loss a voluntary choice on his part. Defendant analogizes this case to *Taylor*, which she argues supports her contention that a person's right to their own personal property can be lost by failing to timely retrieve it. Defendant also argues that, despite the district court's determination to the contrary, Plaintiff failed to make an adequate demand for return of his property and that Defendant never explicitly refused to return it.

**{12}** We agree with the district court that Plaintiff made a sufficient demand for his property, and Defendant's refusal was sufficiently absolute. More specifically, based on evidence at trial the district court found that Defendant "exercised dominion and control over [Plaintiff's] personal property to the exclusion of [Plaintiff] after demand for the return of his physical property" and that it took a court order and an accompanying deputy sheriff to regain entry to the casita, at which time Plaintiff discovered "multiple personal items missing." The findings are supported by testimony of not only Plaintiff, but also by the testimony of Defendant's acquaintance, who testified to conversations with Defendant that revealed that despite Defendant's denials, she had taken and disposed of or attempted to dispose of Plaintiff's possessions. We will not substitute our judgment for that of the fact-finder. "Findings are sufficient if, taken together and construed in support of the judgment, they justify that judgment." *Chavez v. S.E.D. Labs.*, 2000-NMSC-034, ¶ 19, 129 N.M. 794, 14 P.3d 532. Moreover, "[w]e construe findings to uphold, rather than defeat, a judgment." *Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 31, 132 N.M. 459, 50 P.3d 554.

**{13}** This case is unlike *Taylor*, in which the plaintiff repeatedly called to retrieve parts of comingled charts that belonged to him, but then failed to follow up by reviewing and separating the charts. There was no showing in *Taylor* that the plaintiff would have been prevented from recovering the charts had he made an effort to retrieve the property. 1967-NMCA-015, ¶ 24 ("Here the plaintiff made demand for the delivery to him of his property, *unaccompanied by any other effort on his part to regain possession of this property*, which he had comingled and left with [the] defendant's property." (emphasis added)).

**{14}** Here, evidence amply demonstrated that Plaintiff attempted to physically regain possession of the items in question but was stymied from doing so by Defendant, encountering a changed lock and the need to enlist court and law enforcement assistance to regain entry to the casita, only to find the items gone, permanently depriving Plaintiff of their possession. Stated simply, Plaintiff's demand by text, along with his filing in magistrate court and subsequent arrival to the casita under color of that order together are sufficient to qualify as a demand, as the district court determined. As well, the removal and refusal to return the property, which the district court found was attributable to Defendant, was sufficient to qualify as a deprivation of possession.

**Finding of Damages**

**{15}** Regarding damages, the district court made clear that its finding reflected "the value of the personal property on the date of the loss." Defendant nonetheless argues that the district court made its determination based on some other point in time, correctly pointing out that the measure of damages for conversion is "the value of the property at the time of conversion with interest." *Muncey v. Eyeglass World, LLC*, 2012-NMCA-120, ¶ 23, 289 P.3d 1255 (internal quotation marks and citation omitted). Defendant argues, as she did in her closing argument, that the amount proffered by Plaintiff for the value of his belongings was the replacement value, not the fair market value. Accordingly, Defendant alleges the district court erred in entering those amounts as the amount of damages.

**{16}** It is true that the district court heard evidence of the value of the belongings at their time of purchase from Plaintiff. Defense counsel insinuated that the fair market price had gone down; Plaintiff suggested that the fair market price had gone up. Importantly, Defendant did not object to any of Plaintiff's numerous proffered values for the many items missing from the casita. Nor did either party call an expert to testify to the potential change in value of the items. Due to Defendant having taken the items, as determined by the district court, they were not available for inspection to determine their condition so as to ascertain their diminution in value. But to reiterate, the district court made clear in its findings that its determination of value was the date of loss, which we presume to be correctly applied by the district court. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred.").

**{17}** We are unpersuaded that Defendant has demonstrated error on the district court's part. Indeed, it is unclear what Defendant suggests the district court should have done in the absence of such evidence. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not . . . guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). And, in any event, the damages award was substantially lower than what Plaintiff sought, demonstrating the district court's consideration of the evidence presented. Therefore, we hold that Defendant has not demonstrated error on the part of the district court.

**CONCLUSION**

**{18}** For the foregoing reasons, we affirm.

**{19} IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**