# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-051

Filing Date: February 5, 2014

Docket No. 32,334

CURTIS V. MYERS and
BARBARA A. MYERS,
husband and wife,

      Plaintiffs-Appellees,

v.

JACQUELINE K. ARMSTRONG,

      Defendant-Appellant.

## APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
William H. Brogan, District Judge

John D. Wheeler & Associates, P.C.
John D. Wheeler
Alamogordo, NM

for Appellees

John R. Hakanson, P.C.
John R. Hakanson
Alamogordo, NM

L. Helen Bennett
Albuquerque, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

{1}    This case is an appeal of a ruling by the district court enjoining Jacqueline Armstrong (Defendant) from operating her dog training and boarding businesses on her residential

1

property and ordering her to remove or alter the metal building she constructed to house the businesses. Defendant's activities were found to be in violation of the restrictive covenants of the subdivision where her property was located. We affirm the judgment of the district court.

## BACKGROUND

**{2}** Curtis and Barbara Myers (Plaintiffs) and Defendant were neighbors in the Tierra del Sol Subdivision, located in Otero County, New Mexico. In 2000, Defendant opened a dog training business on her property. In 2003, Defendant added a dog boarding business. In January 2009, Defendant began construction of a 3,000 square foot metal outbuilding on her property for use in connection with the businesses. Construction was completed in October 2009.

**{3}** Tierra Del Sol is a residential subdivision, with restrictive covenants put in place by the developer. These covenants provide that all lots in the subdivision are for residential purposes only. Dogs can only be maintained on any premises for household, residential, and non-commercial use or benefit. All improvements in the subdivision require the written approval of the Architectural Control Committee (ACC). Only single-family and related structures are permissible. Criteria for approval include quality of workmanship, materials, and harmony with existing structures. After 1984, there has not been an ACC.

**{4}** At trial, Plaintiffs asserted that Defendant's 3,000 square foot metal building used for the dog training businesses and constructed without ACC approval, as well as the businesses themselves, violated the Tierra Del Sol restrictive covenants. The district court agreed.

**{5}** On appeal, Defendant argues that the restrictive covenants are unenforceable or void in the absence of an ACC. Defendant also argues that the covenants are unenforceable because changes in the subdivision undermined the uniformity sought by these restrictions. Finally, Defendant argues that Plaintiffs have, by acquiescence, waived their right to enforce the covenants. We address these arguments in turn.

## LACK OF AN ACC

**{6}** It is undisputed that the body empowered to enforce the covenants, the ACC, ceased to exist in a meaningful way before Defendant began operating her businesses from her property. Defendant concedes that she violated the restrictive covenants, but argues that, in the absence of an ACC, the covenants were unenforceable. Defendant further argues that, in the absence of an ACC, compliance with the restrictive covenants that required approval for improvements was impossible, and therefore the entire scheme of the restrictive covenants was void. Defendant's arguments raise a legal question, and therefore we review the question de novo. *Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 24, 136 N.M. 630, 103 P.3d 554.

2

**{7}** Defendant's arguments fall within the ambit of *Jones v. Schoellkopf*, which also addressed a subdivision lot owner who undertook an improvement that was a potential covenant violation without the required architectural review committee approval. *See* 2005-NMCA-124, ¶¶ 18-19, 138 N.M. 477, 122 P.3d 844. In *Jones*, the architectural review committee had fallen into disuse. *Id.* ¶ 21. The *Jones* Court noted that the lot owner who was potentially in violation of a restrictive covenant had a right to review but that the review power "would have to be exercised reasonably." *Id.* ¶ 20. The restrictive covenants were not declared unenforceable or void because there was not an architectural control committee. *See id.* ¶¶ 26-28. Instead, the *Jones* Court remanded to the trial court, requiring an equitable solution that took into account the rights of all parties, given the requirements that the reviewing body, whether a court or an architectural review committee, would have to exercise power reasonably and take into consideration explicit prohibitions in the covenants. *Id.* ¶¶ 20, 26-28.

**{8}** Defendant relies on two cases, neither of which is helpful to her. One case, *Hourani v. Katzen*, 305 S.W.3d 239 (Tex. Ct. App. 2009), is easily distinguishable on its facts. In *Hourani*, a lot owner sought a variance from restrictive covenants to build a bridge or driveway because access to his lot was severely limited by a lake that spanned almost the entire width of the property. *Id.* at 244. In the absence of the body charged with enforcement of the covenants, the lot owner submitted his construction plans to all of the other owners in the subdivision. *Id.* Because he received notice that his neighbors disapproved, he brought a prospective action for declaratory judgment. *Id.* at 244-45. The Texas Court of Appeals affirmed the grant of summary judgment in favor of the lot owner seeking a variance, but did not do so by determining that the covenants were generally unenforceable or void in the absence of the body entitled to enforce them. *Id.* at 252-254. Rather, the lot owner prevailed because of the strength of his right to access his property. *Id.* The other case relied on by Defendant, *Hanchett v. East Sunnyside Civic League*, 696 S.W.2d 613 (Tex. Ct. App. 1985), in fact, directly supports Plaintiffs. Defendant cites *Hanchett* for the proposition that failure to get approval from a defunct architectural review committee is insufficient to justify an order to remove the violating structure. *Id.* at 615-16. But relying on the fact that there was a clear violation of a clear covenant, the *Hanchett* Court upheld the covenant and affirmed the order to remove the offending structure. *Id.* at 616.

**{9}** The fact that the ACC fell into disuse does not excuse compliance with the remainder of the covenants. *Jones*, 2005-NMCA-124, ¶ 26. Covenants impose binding obligations upon owners in planned subdivisions. *Nettles v. Ticonderoga Owners' Ass'n*, 2013-NMSC-030, ¶ 1, 306 P.3d 441. Defendant's dog boarding and training businesses clearly violate the covenants limiting subdivision lots to residential purposes and prohibiting the maintenance of dogs for commercial purposes. Defendant's construction of a large commercial building clearly violates the covenant allowing only single-family residential and related structures. A court, sitting in the place of the ACC, cannot ignore the explicit prohibitions in the covenants. *See Jones*, 2005-NMCA-124, ¶ 27 (holding that a court sitting in the place of a defunct architectural control committee must take into consideration explicit prohibitions in

the covenants). The lack of an active ACC did not, of itself, permit Defendant to violate clear prohibitions in the restrictive covenants.

**CHANGES IN THE SUBDIVISION**

**{10}** Defendant argues that because the uniformity sought by the restrictive covenants was effectively destroyed by other violations, equity favored denial of the relief requested by Plaintiffs. We review the district court's exercise of equitable powers under an abuse of discretion standard. *Amkco Co. v. Welborn*, 2001-NMSC-012, ¶ 8, 130 N.M. 155, 21 P.3d 24. Unless the decision of a trial court is clearly untenable or not justified by reason, we refrain from reversing a decision as an abuse of discretion. *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829.

**{11}** "Restrictive covenants have historically been used to assure uniformity of development and use of a residential area to give the owners of lots within such an area some degree of environmental stability." *Heltman v. Catanach*, 2010-NMCA-016, ¶ 17, 148 N.M. 67, 229 P.3d 1239 (internal quotation marks and citation omitted). "[S]uch covenants constitute valuable property rights of the owners of all lots in the tract." *Montoya v. Barreras*, 1970-NMSC-111, ¶ 12, 81 N.M. 749, 473 P.2d 363. But a covenant may be set aside when the uniformity or other purpose of the covenant has been destroyed by other violations or changes in the neighborhood. *Heltman*, 2010-NMCA-016, ¶ 17. In order to extinguish a covenant, the degree of change must be so significant and radical that it is impossible to carry forward the original purpose and intent of the grantors. *Id.*

**{12}** Defendant points out that there were businesses in the subdivision other than hers, also in violation of the covenants. For several years, an auto mechanic operated a shop on his property. He first operated out of his attached garage and then built an 800-square-foot structure to house the business. The new structure conformed architecturally to the style of his home. When the business was ready to expand, he decided to move the business to town rather than construct a large building on his property. In part, he did so because he was concerned that a large, commercial building would have been intrusive to his neighbors and, for this reason, construction of such a building would not have worked. Another homeowner had sideline businesses rebuilding backhoes, purchasing and rebuilding Volkswagens, and dealing guns. This owner moved out prior to the start of Defendant's businesses. Also, Plaintiffs admit that there was a document destruction business with a presence in the subdivision in the form of trucks related to the business. The district court found that the business did not operate out of the subdivision. Finally, there was a large metal carport on one property.

**{13}** Under New Mexico precedent, the district court had a reasonable basis to conclude that conditions in the subdivision had not changed so radically that the original purpose and intent of the covenants was frustrated. In *Mason v. Farmer*, our Supreme Court refused to enforce a restrictive covenant in Cloudcroft because in the sixty or so years since the passage of the covenant, Cloudcroft was transformed from an exclusively residential and pedestrian

4

summer resort that was reachable only by wagon road to a full-service village with numerous year-round residents, a school, and highway access. 1969-NMSC-050, ¶¶ 8-11, 13, 22, 80 N.M. 354, 456 P.2d 187. The *Mason* Court determined that the evidence supported a finding by the district court that it would be inequitable to enforce restrictions prohibiting commercial uses because widespread changes in Cloudcroft rendered the property in violation unsuitable for residential uses. *Id.* ¶ 22. The *Mason* Court also held that enforcement of the restriction would accrue no benefits to the other lots. *Id.* This case is unlike *Mason*. Instead, it is akin to *Jones*, in which this Court found that prohibiting the enforcement of a restrictive covenant was an abuse of discretion when six of 170 lots had some degree of violation. 2005-NMCA-124, ¶ 16. The subdivision at issue in this case has fifty-four lots. Over the years, there were only two lots with commercial activities taking place. Only one of the two had a commercial structure, and that structure was relatively small and built in the style of the related residential structure. By the time Defendant chose to construct her building, no other commercial activity remained in operation in the subdivision. The evidence seems to suggest that the only violation or potential violation was a metal carport. The number, magnitude, and tenor of violations presented to the district court do not indicate radical change such that the purpose and intent of the covenants restricting commercial structures and activities was frustrated. We are therefore unwilling to reverse the district court's exercise of discretion and set aside the covenant on the basis of changed conditions and covenant violations.

## PLAINTIFFS' ACQUIESCENCE

{14}    Plaintiffs were aware of some of the other covenant violations in the subdivision and also of Defendant's businesses, but they did not attempt to enforce the covenants until after Defendant built her large metal building. Defendant asserts that Plaintiffs' failure to enforce the covenants against other violators and delay in enforcement against her constitute acquiescence on the part of Plaintiffs. Defendant asserts that in not so finding, the district court committed reversible error. Neither party raised a statute of limitations issue, and therefore we do not consider whether any statute of limitations applies in this case. *See In re Doe*, 1982-NMSC-099, ¶ 3, 98 N.M. 540, 650 P.2d 824 (recognizing that appellate courts should not reach issues not raised by the parties).

{15}    We review the district court's refusal to apply the equitable defense of acquiescence on these facts for an abuse of discretion. *See Wolf & Klar Cos. v. Garner*, 1984-NMSC-040, ¶ 10, 101 N.M. 116, 679 P.2d 258 (holding that a trial court's application of "clean hands" or other equitable defenses is reviewed under an abuse of discretion standard).

{16}    Waiver of the right to enforce a covenant by acquiescence requires a showing that the party attempting to enforce the covenant previously acquiesced to other violations of the same or similar covenants on another restricted lot. *Heltman*, 2010-NMCA-016, ¶ 23. Important considerations include "whether the party seeking to enforce the covenant had actual or constructive knowledge of the prior violations, the magnitude of the current violation as compared to prior violations, and whether the prior violations were temporary,

5

occasional, or permanent." *Id.* Failure to enforce against minor and trivial violations does not, of itself, constitute acquiescence. *See Neff v. Hendricks*, 1953-NMSC-060, ¶ 7, 57 N.M. 440, 259 P.2d 1025 (holding that failure to enforce minor and trivial violations did not bar enforcement of restrictive covenants).

{17}    Plaintiffs knew that there was a car mechanic who operated out of his attached garage and then from a structure built in the style of his dwelling. In comparison to Defendant's metal building, the mechanic's structure was small and built to conform with the existing residence. He spoke with his immediate neighbors prior to opening his business, none of whom objected. Instead of building a large structure like Defendant's, he moved his business into town to accommodate expansion. By the time Defendant opened her business, the mechanic was no longer in the subdivision. The owner with the sideline businesses was also out of the subdivision by the time Defendant opened her businesses and built her structure. The metal carport, although large, is unlike Defendant's activities. In short, the impacts of these other violations or possible violations were minor and trivial in comparison with the impact of Defendant's building and businesses directly across from the lots owned by the Plaintiffs. Furthermore, the restrictive covenants specifically provide that the failure to promptly enforce any of the covenants or restrictions does not bar subsequent enforcement.

{18}    We reject the notion that individual owners in a subdivision must move to enforce the covenants against relatively minor violations that have little impact on them in order to maintain the right to enforce against violations that significantly impact their rights. *See* 3 Herbert Thorndike Tiffany, *The Law of Real Property*, ch. 18, § 874, at 516 (3d ed. 1939) (stating that "[a]cquiescence in a breach of a minor character would not, in any state, it seems probable, constitute grounds for denying relief against a breach of a much more serious character"); *see also Neff*, 1953-NMSC-060, ¶ 7 (holding that failure to enforce minor and trivial violations did not bar enforcement of restrictive covenants). To adopt Defendant's acquiescence argument would allow any sort of construction within the limits of zoning laws in this subdivision because minor, ultimately temporary, violations were not previously protested. The district court did not abuse its discretion in declining to find that Plaintiffs waived their right to enforce the restrictive covenants on the basis of acquiescence.

{19}    The judgment of the district court is affirmed.

{20}    **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

6

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for** *Myers v. Armstrong*, **No. 32,334**

**APPEAL AND ERROR**
Standard of Review

**CONTRACTS**
Restrictive Covenants

**PROPERTY**
Restrictive Covenants

**REMEDIES**
Equity